RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9/25/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KEITH D. BROWN,<br>    Petitioner | CIVIL ACTION<br>SECTION "P"<br>NO. 1:13-CV-03298 |
| VERSUS | |
| K. ASK-CARLSON,<br>    Respondent | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by petitioner Keith D. Brown ("Brown") on December 27, 2013. Brown contends his right to due process was violated by the Bureau of Prisons ("BOP") at the Federal Medical Center in Butner, North Carolina ("FMC-Butner") in his November 2012 disciplinary proceedings. Brown contends (Doc. 1), and the Respondent admits (Doc. 9), that Brown has exhausted his administrative remedies. Brown is presently incarcerated in the Federal Correctional Complex in Pollock, Louisiana ("USP-Pollock").

Brown raises the following issues for judicial review (Doc. 1):

    1. Whether the BOP's decision was arbitrary and denied Brown due process.

    2. Whether the Warden violated policy and procedures.

For relief, Brown asks for reinstatement of 27 days of good conduct time and restoration of his telephone and visitation privileges

(Doc. 1).

The Respondent answered the petition (Doc. 9). Brown's habeas petition is now before the court for disposition.

## Facts

Brown was originally charged by the Bureau of Prisons ("BOP") with a violation of Code 111 (introduction of illegal drugs into the prison). The BOP incident report shows that, on May 18, 2012, investigators determined that Brown and inmate Damon Deshields conspired to introduce narcotics into the Federal Medical Center in Butner, North Carolina on April 8, 2012 (Doc. 1, Ex.).

The Disciplinary Hearing Officer's ("DHO") Report shows that, on April 8, 2012, Brown placed several calls to Bruce Watson, a civilian, providing Watson with detailed instructions as to how to execute a drug deal; instructions were also provided through email and mail correspondence (Doc. 1, Ex. ). The Report shows that Brown approached inmate Deshields with a plan which consisted of Deshields having his female visitor (daughter Danielle Deshields) contact Watson; Watson was to give the package of drugs to Danielle Deshields, who would then visit inmate Deshields and give him the package of drugs. Inmate Deshields was then to exit the visiting room with the package of drugs and give it to inmate Brown (Doc. 1, Ex.). The DHO's Report shows that inmate Deshields was searched and the package of heroin was found before he could pass it to Brown (Doc. 1, Ex.).

2

The DHO's report further shows that Brown was charged with offense codes 111 (introduction of drugs) and 297 (use of the telephone to further criminal activity) (Doc. 1, Ex.). The Report shows that a copy of the incident report was given to Brown on September 10, 2012, Brown was advised of his rights on September 12, 2012, Brown did not waive his right to a representative and a representative was present at his disciplinary hearing, which was held on November 6, 2012 (Doc. 1, Ex.).

The DHO's Report shows that Brown denied having a role in introducing the heroin into the prison (Doc. 1, Ex.). The Report shows that Brown called three witnesses who were not available because they had been transferred to a different facility, but that two of them submitted written statements denying any knowledge of the incident and the third, Deshields, submitted a written statement refusing to comment (Doc. 9, Ex.). The Report reflects that, in addition to the incident report and the investigation report, the DHO considered Brown's written statements, the written statements from Brown's three witnesses, three "notification to visitor" forms, a photograph, memoranda from Ryan and Davis, a letter from Deshields, phone records, visitation records, and photocopies of three driver's licenses (Doc. 1, Ex.).

The DHO found Brown had committed a code 297 violation (using the telephone to further criminal activity) because an investigator's report showed that investigators had tracked and

recorded Brown's phone calls and emails to Bruce Watson on April 4, 2012 (when he used code to give Danielle Deshields' phone number and address to Watson) and on April 12, 2012 (when he used code to ask if Watson had met with former inmate Cook to set up the deal for heroin). The Report also shows that Brown admitted he used code in his conversations with Bruce Watson; however, Brown told the investigator that, when he referred to "tension" and "fever," he was talking about "shoes" and "$500," and not "heroin and crack. Another investigator's report shows Brown made also telephone calls to inmate Victor Cook and tried to set up a drug deal through Cook (Doc. 9, p. 144).

The DHO's report also shows that Damon Deshields stated that Brown approached him and suggested Deshields use his daughter and his wheelchair to smuggle drugs through the prison visiting room (Doc. 9, p. 187). The report shows that Bruce Watson, Nadia Tucker and Danielle Deshields went together to visit FMC Butner on April 15, 2012 and entered the visiting room at the same time; the notification form they filled out showed they also rode in the same vehicle (Doc. 9, p. 187). The report shows that Watson handed the package of heroin to Danielle Deshields in the visiting room, then Danielle Deshields passed the heroin to her father, Damon Deshields, who placed the heroin under his wheelchair seat cushion and attempted to smuggle the heroin out of the visiting room (Doc. 9, p. 187). Deshields was caught with the heroin before he passed

it to Brown (Doc. 9, p. 187). Brown admitted that he was acquainted with Damon Deshields, Watson, Danielle Deshields, and Nadia Tucker (Doc. 9, p. 187).

Brown was found guilty of using the telephone to further criminal activity, and penalized with loss of 27 days of good conduct time, as well as loss of telephone and visitation privileges for one year (Doc. 9, p. 134).

<u>Law and Analysis</u>

Brown contends the BOP violated his right to due process by failing to give him advance notice of the charge of using the telephone to further criminal activity, the factfinder (hearing officer) failed to provide a written statement as to the evidence relied on and the reason for the disciplinary action taken, and by denying Brown's requests to call witnesses and present documentary evidence in his defense.

1.

A prisoner's challenge to a disciplinary action may fall within the scope of § 2241. <u>Carmona v. United States Bureau of Prisons</u>, 243 F.3d 629, 632 (2d Cir.2001). Relief is not available, however, unless the petitioner shows that prison authorities deprived him of some right secured by the Constitution or laws of the United States. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633-34, 113 S.Ct. 1710 (1993); <u>Orellana v. Kyle</u>, 65 F.3d 29, 31 (5th Cir. 1995), cert. den., 516 U.S. 1059, 116 S.Ct. 736 (1996).

The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. Sandin v. Conner, 515 U.S. 472, 478, 115 S.Ct. 2293 (1995). The touchstone of due process is protection of the individual against arbitrary action of government. Thompson, 263 F.3d at 427, quoting Wolff, 418 U.S. at 558, 94 S.Ct. 2963. A recognized liberty or property interest must be at stake before a due process claim is cognizable. Bd. of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701 (1972). Thus, a petitioner is not entitled to due process protections in a prison disciplinary hearing unless he is subjected to sanctions which impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 484. So long, however, as the punishment is within the normal limits or range of custody which the conviction has authorized the State to impose, there is no violation of a protected liberty interest conferred by the Due Process Clause. Richardson v. Joslin, 501 F.3d 415, 419 (5th Cir. 2007), and cases cited therein.

Where the Due Process Clause does not create a liberty interest, the government can create one by statute. Such a statute confers a liberty interest that is generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life. For example, an action that inevitably affects the duration of a sentence might violate a liberty interest created by statute. Richardson, 501 F.3d at 419. A prisoner's challenge to the loss of good time credits is, in effect, a challenge to his custody. When a state prisoner attacks the fact or length of his confinement, the appropriate cause of action is a petition for writ of habeas corpus. Hernandez v. Spencer, 780 F.2d 504, 505 (5th Cir. 1986), citing Jackson v. Torres, 720 F.2d 877, 879 (5th Cir. 1983).

The hallmark of a statute that has not created a liberty interest is discretion. Where the statute grants the prison administration discretion, the government has conferred no right on the inmate. Richardson, 501 F.3d at 419, and cases cited therein.

An inmate has a liberty interest in good time credits, Sandin, 515 U.S. at 477-78, 115 S.Ct. at 2297, but does not have a liberty interest in privileges, Sandin, 515 U.S. at 481, 115 S.Ct. at 2299, such as visitation and telephone. Loss of privileges does not implicate due process concerns. A temporary loss of privileges does not pose atypical or significant hardships beyond the ordinary incidents of prison life. Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000); Madison v. Parker, 104 F.3d 765, 767-68 (5th Cir. 1997). Also, Payne v. Dretke, 80 Fed.Appx. 314, 315 (5th Cir. 2003), citing Preiser v. Rodrequez, 411 U.S. 475, 500, 92 S.Ct. 1827 (1973).

Where an inmate does not attack his underlying criminal conviction and does not seek either to be released from confinement or an order that the duration of his prison sentence be shortened, but only seeks an order overturning a disciplinary conviction and a favorable determination of his claims would not automatically entitle him to accelerated release, the appropriate vehicle for his claims is a civil rights action under 42 U.S.C. § 1983.  Payne, 80 Fed.Appx. at 315.

Brown complains that his disciplinary proceedings violated his right to due process and resulted in the loss of good time credits, visitation privileges and telephone privileges, all of which he asks to have restored.  Since the loss of good time credits affects the length of Brown's sentence, Brown has a liberty interest in his good time credit.  Therefore, Brown's due process claim is properly before the court in a habeas petition.

However, Brown's claims of loss of telephone privileges and visitation privileges do not affect the length of his sentence and are not properly before the court in this habeas petition.  A civil rights complaint pursuant to 28 U.s.C. § 1983 is the appropriate vehicle for those claims.

2.

Brown contends the prison officials violated his right to due process in his prison disciplinary proceedings when they failed to give him at least 24 hours advance notice of the charge of using

8

the telephone to further criminal activity.

Where a prison disciplinary hearing may result in the loss of good time credits, due process requires: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in the inmate's defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. <u>Superintendent v. Hill</u>, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985). Also, <u>Henson v. U.S. Bureau of Prisons</u>, 213 F.3d 897 (5th Cir. 2000).

These requirements are flexible, however, and must necessarily be balanced against legitimate penological interests. <u>Henson</u>, 213 F.3d at 898. Thus, prison officials can limit the evidence a prisoner presents when they can articulate legitimate reasons for doing so. <u>Henson</u>, 213 F.3d at 898, and cases cited therein. These reasons include assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. <u>Henson</u>, 213 F.3d at 898, citing <u>Hill</u>, 472 U.S. at 455, 105 S.Ct. 2768. The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. <u>Hill</u>, 472 U.S. at 455, 105 S.Ct. 2768.

Brown is serving a prison sentence of 168 months imprisonment

(Docs. 9) and alleges that, on April 16, 2012, he was placed in administrative detention pending the investigation of an allegation that he was trying to introduce narcotics into the federal prison (Doc. 1, Ex.). Brown contends he was given an incident report dated May 18, 2012 charging him with the offense of attempting to introduce narcotics into the prison (Code 111) (Doc. 1). Brown also contends that, after a disciplinary hearing, he was found to have not possessed anything unauthorized on April 16, 2012 and that charge was dropped. Instead, inmate Damon Deshields was found to have possessed the narcotics on that date and Brown was only found guilty of using the telephone to further criminal activity (Doc. 9, pp. 174-177).

The Respondent shows that a copy of the incident report, which charged him with violations of both Code 111 (drugs) and Code 297 (use of the telephone to further criminal activity), was given to Brown on September 10, 2012,(Doc. 1, pp. 18, 72; Doc. 9, pp. 143, 187). The hearing was held on November 6, 2012. Therefore, Respondents show that Brown received notice of the telephone charge two months before his disciplinary hearing.

A habeas petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108

S.Ct. 1059 (1988).

Since Brown has not offered anything other than own his self-serving statement that he did not receive advance notice of the charge, he has not carried his burden of proving his right to due process was violated. This ground for relief is meritless.

3.

Next, Brown contends the hearing officer failed to provide a written statement as to the evidence he relied on and the reasons for the disciplinary action taken. The Respondent shows that the Disciplinary Hearing Officer wrote an exhaustive report as to the evidence adduced at Brown's disciplinary hearing which support his finding that Brown is guilty of using the telephone to further criminal activity (Doc. 9, pp. 174-177). Brown's unsupported contention is insufficient to carry his burden of proving a due process violations. This ground for relief is also meritless.

4.

Brown contends he was denied due process when the prison officials denied his requests to call witnesses and present documentary evidence in his defense.

Brown contends the visiting room surveillance video would have shown that Brown never spoke to any of Deshields' visitors and that the visitors did not give anything to him. Since Brown was not convicted of introducing the narcotics into the prison facility, the video from the visiting room would not have assisted him at his

11

hearing. Brown cannot show that he was prejudiced by not being able to present the surveillance video.

Brown also complains he was not provided with the phone records and emails he requested. Brown does allege or show which emails and phone records he needed (though presumably they are the ones the hearing officer relied on) or how these would have aided his defense. In any event, the emails and phone records the hearing officer used tended to prove Brown's guilt and were not exculpatory. This ground for relief is meritless.

Brown contends he was denied the right to present witnesses because the BOP transferred his witnesses to other facilities. The Respondent shows, through the DHO's Report, that Brown called three witnesses who were not available for the hearing because they had been transferred to different facilities after the incident; however, two of them submitted written statements denying any knowledge of the incident and the third, Deshields, submitted a written statement refusing to comment on the incident (Doc. 9, p. 134). The Report reflects that, in addition to the incident report and investigation reports, the Disciplinary Hearing Officer considered Brown's written statements and the written statements from Brown's three witnesses, as well as three notification to visitor forms, a photograph, a letter from Deshields, phone records, visitation records, and three photocopies of driver's licenses (Doc. 9, p. 134). Since the DHO adequately explained the

absence of Brown's three witnesses from the hearing and obtained written statements from two of them, Brown was not denied due process.

Inmates do not have the full panoply of due process rights at prison disciplinary proceedings. See <u>Henson</u>, 213 F.3d at 898. Prison disciplinary proceedings are overturned *only* where no evidence in the record supports the decision. <u>Broussard v. Johnson</u>, 253 F.3d 874, 877 (5th Cir. 2001). Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer. <u>Hudson v. Johnson</u>, 242 F.3d 534, 537 (5th Cir. 2001). Since sufficient evidence supported the Hearing Officer's finding that Brown used the prison telephone to further criminal activity, Brown has not shown a violation of his right to due process at his disciplinary hearing.

This ground for relief is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Brown's Section 2241 petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases (and other habeas cases pursuant to see Rule 1(b)) in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum**

setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the 24th day of September 2014.

                                                      JAMES D. KIRK
                                     UNITED STATES MAGISTRATE JUDGE